Filed 9/26/13  In re C.S. CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

| | |
|---|---|
| In re C.S., a Person Coming Under the Juvenile Court Law. | 2d Juv. No. B247702 (Super. Ct. No. J068823) (Ventura County) |
| VENTURA COUNTY HUMAN SERVICES AGENCY, Plaintiff and Respondent, v. D.U., Defendant and Appellant. | |

D.U., the mother of C.S., a 12-year-old dependent child, appeals an order denying her petition to obtain visitation and reunification with her son based on changed conditions.  (Welf. & Inst. Code, § 388.)[1]  As a result of a guardianship order, C.S. was removed from D.U.'s custody shortly after his birth and placed in the care of J.Q.--the legal guardian.  In 2012, the Ventura County Human Services Agency (HSA) filed a juvenile dependency petition (§ 300, subds. (b) & (c)), alleging J.Q. was unable to care for the child.  D.U. filed a section 388 petition alleging changed conditions.

---

[1] All statutory references are to the Welfare and Institutions Code.

We conclude the trial court did not err because D.U. did not make a sufficient showing that visitation was in the best interests of the child.  We affirm.

FACTS

D.U. gave birth to C.S. in 2001, but she had a substance abuse problem and was unable to care for the child.  She decided that a relative should take care of this baby boy and she "agreed" to a guardianship.  The superior court granted a guardianship petition appointing J.Q. as the legal guardian of C.S.

In May 2012, HSA filed a juvenile dependency petition.  It alleged J.Q. was unable to care for C.S. because she had a substance abuse problem, mental problems, and "a history of gang affiliation."  After a jurisdiction/disposition hearing, C.S. was declared "a dependent child of the [c]ourt."  The trial court ordered HSA to provide family maintenance services to J.Q.  After a six-month review hearing, the court ordered family maintenance services to continue.

In January 2013, HSA filed a detention report, noting that C.S. had been placed with J.Q.'s grandparents.  In that report, the social worker said J.Q. did not "actively participate in the case plan," and she and the child "have mental issues that are not adequately being addressed."  He said J.Q. "engaged in two recent domestic violence incidents with her husband and has not followed through with filing a restraining order."  HSA alleged that J.Q.'s conduct placed "the child at substantial risk of serious physical harm."

In a January 31, 2013, jurisdiction/disposition report, HSA recommended that family reunification services "be offered to [J.Q.]."  It noted that the child was temporarily placed with J.Q.'s parents.  The trial court sustained the petition after an "uncontested hearing."  It also appointed attorney Richard Gilman to represent D.U.

On February 14, 2013, D.U. filed a section 388 petition asking the trial court to change a January 13, 2013, order which provided that only J.Q. could visit C.S.  D.U. sought visitation and "reunification services" with C.S.  She said, "[C.S.] has recently been moved from one guardian's home to another, and I believe he is at an age where he can handle being reintroduced to me as his mother."  She said she graduated

2

from the "Lighthouse program" in 2006, and has "been sober for 7 years." She said: 1) she was employed and had the resources to provide "a stable" and "healthy" home environment, 2) C.S.'s two brothers live with her, 3) C.S. had an "established relationship" with his older brother who resided with her, and 4) it was important for C.S. to have a relationship with her and initiate a relationship with his other brother who also resided in her home.

D.U. attached numerous letters from individuals who supported her petition. The Director of Genesis Sober Living, Inc. said, "[D.U.] has always displayed a high degree of integrity, responsibility and ambition. . . . Very rarely have I seen a woman with such strength and endurance accomplishing her goals of family restoration." The Director of the Lighthouse for Women & Children said, "I have the utmost confidence that [D.U.] will be the wonderful and loving mother to [C.S.] that she has longed to be. . . . [¶] I strongly recommend [C.S.] be placed permanently in the care of [D.U.]." A Lighthouse case manager wrote, "The only thing missing from her life is her son [C.S.]. I believe that if given the chance, [D.U.] will do her best for all three of her boys."

The trial court filed an order finding that D.U. made a prima facie showing for an evidentiary hearing. It said, "[T]he court orders a hearing on the form JV-180 request because the best interest of the child may be promoted by the request."

At the February 28, 2013, hearing on the section 388 petition, HSA filed a memorandum recommending against visitation by D.U. In the memorandum, the social worker said D.U. "completed programs addressing anger management and substance abuse . . . and has since been sober and able to maintain steady employment and housing." C.S. had never met D.U. When the HSA worker asked the child, now 12 years old, if he wanted to meet D.U., he said "no." J.Q. told HSA she wanted "to relinquish" her family reunification services. J.Q.'s parents (hereafter referred to as the grandparents) wanted to adopt C.S. When the worker advised C.S. of these developments, he "did not respond." The HSA worker said, "More time is needed to evaluate [the child's] desire for permanency with" the grandparents. C.S. refers to J.Q. as his "mom." He told HSA that

3

he wanted to see his brother and that the last time he saw him was three years ago.  HSA concluded, "[T]he lack of contact or involvement prior to this point on the part of the biological mother is of concern and any involvement at this time can be of detriment to the significant attachment and progress [C.S.] has made with his current family."

D.U.'s trial counsel objected to the memorandum.  He said he did not have an opportunity to challenge factual statements in the document because it was just submitted.  He questioned the correctness of certain facts stated by the HSA worker and requested "an evidentiary" hearing.  Counsel noted that the worker said, "[W]e need more time to evaluate the permanency of his present guardianship placement."  He also claimed the memorandum contained ambiguities in that it presents "more questions than answers."  The HSA worker who wrote the memorandum did not attend the hearing.

The juvenile court rejected the request for an evidentiary hearing.  It said, "I think that mother has certainly shown changes, but I don't believe she's shown how this will be beneficial to [C.S.].  [F]or that reason, I'm going to find that the prima facie showing has not been met . . . ."

DISCUSSION

*The Section 388 Petition*

D.U. contends the trial court erred by not holding an evidentiary hearing to resolve the factual issues raised by her section 388 petition.  We disagree.

Section 388 subdivision (a)(1) provides, in relevant part, that "[a]ny parent . . . having an interest in a child who is a dependent child of the juvenile court . . . may, upon grounds of change of circumstance or new evidence, petition the court . . . for a hearing to change, modify, or set aside any order of court previously made or to terminate the jurisdiction of the court."

"The petition for modification is 'to be liberally construed in favor of granting a hearing to consider the parent's request.'" (*In re Hashem H.* (1996) 45 Cal.App.4th 1791, 1798.)  "'The parent need only make a prima facie showing to trigger the right to proceed by way of a full hearing.'" (*Id.* at p. 1799.)  Where a parent has made such a showing, the failure to hold an evidentiary hearing contravenes the parent's due

4

process rights. (*Id*. at p. 1800.) In such a case, appellate courts "cannot presume that a hearing would have been fruitless." (*In re Lesly G.* (2008) 162 Cal.App.4th 904, 916.) But if a parent does not make a sufficient showing relating to the child's best interest, the court is not required to hold an evidentiary hearing.

D.U. contends the February 28th hearing was procedurally unfair. She claims this case must be remanded for a full evidentiary hearing. She notes that on February 13, 2013, the trial court reviewed D.U.'s section 388 petition and found she had made a sufficient prima facie showing for an evidentiary hearing. But at the hearing two weeks later, it found her showing was insufficient.

HSA claims the trial court properly changed its ruling at the hearing. It argues the facts support the trial court's finding that visitation was not in the child's best interests. We agree.

J.Q. had been C.S.'s legal guardian since he was "two weeks old." D.U. decided shortly after C.S.'s birth that she would not care for him. She consequently decided to have no relationship with this child. Over the years she never visited him. She was a complete stranger to him. D.U.'s first attempt to visit the child was 12 years after his birth. At that time, the child only knew J.Q. and her parents to be his family. He referred to J.Q. as his "mom" and to her parents as "Nana" and "Tata." When the HSA worker asked C.S. if he knew D.U., he said he did not. When he asked if he wanted to visit her, C.S. said "no." These facts are uncontradicted.

D.U. claims the reason she agreed to a guardianship was because of her substance abuse problems after the child was born. She notes she successfully conquered those problems. But this occurred in 2006. She made no adequate showing why she waited seven years after this success before ever making the first effort to visit him.

HSA highlighted its "concern" over D.U.'s "lack of contact or involvement" with the child over the 12-year period. It noted that visitation at this late date and against the child's wishes "can be of detriment to the significant attachment and progress [C.S.] has made with his current family." HSA noted that C.S. said "he enjoys living" with the grandparents. Under their care, "his behavior in school has improved." He had a history

5

of insomnia, but he now "has exhibited consistent sleep patterns." He had an attention deficit hyperactivity disorder, but a change in his medication has improved his behavior. D.U. has not shown an abuse of discretion.

The order is affirmed.

NOT TO BE PUBLISHED.

GILBERT, P.J.

We concur:

YEGAN, J.

PERREN, J.

Ellen Gay Conroy, Judge

Superior Court County of Ventura

_____


Jack A. Love, under appointment by the Court of Appeal, for Defendant and Appellant.


Leroy Smith, County Counsel, Linda Stevenson, Assistant County Counsel, for Plaintiff and Respondent.